Kalpana Srinivasan (SBN 237460)
Marc M. Seltzer (SBN 54534)
Steven Sklaver (SBN 237612)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone (310) 789-3100
Facsimile (310) 789-3150

Chanler A. Langham (TX 24053314) (*pro hac vice* to be filed)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone (713) 651-9366
Facsimile (713) 654-6666

*Attorneys for Plaintiff Ari Brock, on behalf
of himself and others similarly situated*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARI BROCK, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NHK Spring Precision (Guangzhou) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (Hong Kong) Co., Ltd.; TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., SAE Magnetics (H.K.) Ltd., Hutchinson Technology Inc., Headway Technologies, Inc.,<br><br>Defendants. | Case No. 3:19-cv-6887<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# **TABLE OF CONTENTS**

NATURE OF ACTION ........................................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 4

PARTIES ............................................................................................................................ 6

       Plaintiffs ................................................................................................................. 6

       NHK Defendants .................................................................................................... 6

       TDK Defendants .................................................................................................... 8

AGENTS AND CO-CONSPIRATORS .............................................................................. 9

FACTUAL ALLEGATIONS ............................................................................................. 9

       A.   HDD Suspension Assemblies ................................................................... 9

       B.   The Structure and Characteristics of the HDD Suspension Assemblies
           Market Render the Conspiracy More Plausible ..................................... 12

           1.   The HDD Suspension Assemblies Market Has High Barriers
               to Entry ....................................................................................... 12

           2.   Market Consolidation and Concentration .................................... 13

           3.   Inelasticity of Demand for HDD Suspension Assemblies ........... 14

       C.   Government Investigations ....................................................................... 15

       D.   Defendant NHK Spring Co. Ltd. Pleads Guilty to Price-Fixing ............... 16

CLASS ACTION ALLEGATIONS .................................................................................. 17

PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ...................... 20

PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF
LIMITATIONS ................................................................................................................ 24

       A.   The Statute of Limitations Did Not Begin to Run Because Plaintiffs
           Did Not and Could Not Discover Their Claims ..................................... 24

       B.   Fraudulent Concealment Tolled the Statute of Limitations ..................... 25

FIRST CLAIM FOR RELIEF .......................................................................................... 26

       Violation of Section 1 of the Sherman Act (on behalf of Plaintiffs and the
           Nationwide Class) ................................................................................. 26

SECOND CLAIM FOR RELIEF ..................................................................................... 27

       Violation of State Antitrust Statutes (on behalf of Plaintiffs and the
           Damages Class) ..................................................................................... 27

THIRD CLAIM FOR RELIEF ......................................................................................... 49

       Violation of State Consumer Protection Statutes (on behalf of Plaintiffs
           and the Damages Class) ......................................................................... 49

i

FOURTH CLAIM FOR RELIEF ............................................................................... 79

     Unjust Enrichment (on behalf of Plaintiffs and the Damages Class) ............................... 79

PRAYER FOR RELIEF ............................................................................................... 80

DEMAND FOR JURY TRIAL ..................................................................................... 81

CLASS ACTION COMPLAINT

1  Plaintiff Ari Brock, on behalf of himself and all others similarly situated (the "Classes" as

2  defined below) (collectively, "Plaintiffs"), upon personal knowledge as to the facts pertaining to

3  himself and upon information and belief as to all other matters, and based on the investigation of

4  counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal

5  antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment

6  laws.  Plaintiffs demand a jury trial and allege as follows:

7  ## NATURE OF ACTION

8  1.  This lawsuit is brought as a proposed class action against Defendants NHK Spring

9  Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NHK Spring

10  Precision (Guangzhou) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd., NAT Peripheral (Hong

11  Kong) Co., Ltd. (collectively, the "NHK Defendants"), TDK Corporation, Magnecomp Precision

12  Technology Public Co. Ltd., SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc.,

13  Hutchinson Technology Inc. (collectively, the "TDK Defendants") (all as defined below, and

14  collectively "Defendants"), and unnamed co-conspirators, manufacturers and/or suppliers of HDD

15  Suspension Assemblies (defined below) globally and in the United States, for engaging in a long-

16  running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids

17  for, and allocate the market and customers in the United States for Hard Disk Drive Suspension

18  Assemblies.

19  2.  Hard Disk Drive Suspension Assemblies ("HDD Suspension Assemblies") are

20  components of hard disk drives, which are used to store information electronically and are

21  incorporated into computers or sold as stand-alone electronic storage devices. Hard disk drives use

22  magnetic recording heads to read from and write onto rapidly spinning disks. Suspension

23  assemblies hold the recording heads in close proximity to the disks and provide the electrical

24  connection from the recording heads to the hard disk drives' circuitry.

25  3.  Plaintiffs seek to represent all persons and entities who, during the period from and

26  including May 1, 2008 through such time as the anticompetitive effects of the Defendants' conduct

27  ceased (the "Class Period") indirectly purchased a product not for resale, which included as a

28

CLASS ACTION COMPLAINT

component part one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants or any co-conspirator of the Defendants.

4.      Defendants manufacture, market, and/or sell HDD Suspension Assemblies throughout and into the United States.  Defendants and their co-conspirators, agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for HDD Suspension Assemblies.

5.      In July 2016, the Japan Fair Trade Commission ("JFTC") searched the offices of TDK Corp. and NHK Spring Co. on suspicion that they formed a price cartel for electronic parts for hard disk drives. The JFTC suspected the two manufacturers of setting retail prices for HDD Suspension Assemblies, used for hard drives in personal computers and gaming consuls, in consultation with each other in violation of the anti-monopoly law.[1]

6.      In July 2016, the U.S. Department of Justice Antitrust Division ("DOJ") sent a letter to Hutchinson Technology Incorporated stating that the DOJ opened an investigation relating to the sale of HDD Suspension Assemblies. The DOJ's letter stated that neither Hutchinson nor any Hutchinson employee was currently a subject of the DOJ investigation, but that the company may have documents and electronic information relevant to the investigation.[2]

7.      In April 2018, Brazilian antitrust authorities launched an investigation into allegations that TDK Corp. and four other companies with current or former ties to the Japanese conglomerate colluded for more than a decade to fix prices in the market for hard disk components. Brazil's Administrative Council for Economic Defense ("CADE") said in a statement that the alleged international cartel involved sharing data and divvying up customers to keep prices high on HDD Suspension Assemblies.  The statement said CADE has evidence of email exchanges and

---

[1] Japan Times, "TDK, NHK Spring searched over alleged price cartel," July 26, 2016, available at: https://www.japantimes.co.jp/news/2016/07/26/business/corporate-business/tdk-nhk-spring-searched-alleged-price-cartel/#.XZujdfZFwqk

[2] Competition Policy International, "US: Hutchinson cooperating with DOJ in hard drive investigation," July 31, 2016, available at: https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation/

2

1    meetings used to facilitate the cartel, which involved sharing current and proposed pricing

2    information, client bids, allocation of customers, production capacity and usage fee structures.[3]

3        8.    In July 2019, Defendant NHK Spring Co. Ltd. agreed to plead guilty and to pay a

4    $28.5 million fine for participating in an unlawful combination and conspiracy to suppress and

5    eliminate competition in the market for HDD Suspension Assemblies by agreeing to allocate the

6    supply of, rig bids for, and fix, stabilize, and maintain the prices of HDD Suspension Assemblies

7    sold in, or delivered to, the United States and elsewhere, from at least as early as May 2008 until

8    at least April 2016.  The combination and conspiracy engaged in by Defendant NHK Spring Co.

9    Ltd. and its co-conspirators was in unreasonable restraint of interstate and foreign trade and

10    commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.[4]

11        9.    The Defendants and their co-conspirators participated in a combination and

12    conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to

13    allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, HDD Suspension

14    Assemblies sold to hard disk drive manufacturers and others in the United States.  The combination

15    and conspiracy engaged in by the Defendants and their co-conspirators was in unreasonable

16    restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act,

17    15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection and unjust enrichment

18    laws.

19        10.    As a direct result of the anti-competitive and unlawful conduct alleged herein,

20    Plaintiffs and the Classes paid artificially inflated prices for HDD Suspension Assemblies during

21    the Class Period and have thereby suffered antitrust injury to their business or property.

22

23

24

---

25    [3] Law 360, "Brazil Says 5 Cos. May Have Fixed Prices For Hard Disk Parts," April 27, 2018, available at:

26    https://www.law360.com/articles/1038188/brazil-says-5-cos-may-have-fixed-prices-for-hard-disk-parts.

[4] The United States Department of Justice, "Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for

27    Suspension Assemblies Used in Hard Disk Drives: Company Agrees to Pay $28.5 Million Criminal Antitrust Fine,"
     July 29, 2019, available at: https://www.justice.gov/opa/pr/japanese-manufacturer-agrees-plead-guilty-fixing-prices-

28    suspension-assemblies-used-hard-disk

## JURISDICTION AND VENUE

11.    Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1).  Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection and unjust enrichment laws, and seek to obtain restitution, recover damages and secure other relief against the Defendants for violations of those state laws.  Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.    This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337.  This Court has subject matter jurisdiction of the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants.

13.    Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

14.    This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of their subsidiaries, inter alia: (a) transacted business in the United States as a whole, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD Suspension Assemblies throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States, including in this District; or (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the

4

business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. The Defendants also conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States.

15. The Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16. The activities of the Defendants and their co-conspirators directly targeted the market for HDD Suspension Assemblies and products containing HDD Suspension Assemblies and were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. In addition, Defendants each participated in conspiratorial meetings and discussions located in the United States; each participated in price manipulation and market allocation for HDD Suspension Assemblies installed in products manufactured and sold solely in the United States; each coordinated their price fixing schemes and conspiratorial agreements with subsidiaries located in the United States; and each took further actions in furtherance of the conspiracy with employees and co-conspirators located in the United States. Defendants' products are sold in the flow of interstate commerce.

17. HDD Suspension Assemblies manufactured abroad by the Defendants and sold for use in products in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any HDD Suspension Assemblies are purchased in the United States, and such HDD Suspension Assemblies do not constitute import commerce, the Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury in the United States.

18. By reason of the unlawful activities hereinafter alleged, the Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs

and members of the Classes. The Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for HDD Suspension Assemblies, which conspiracy unreasonably restrained trade and adversely affected the market for HDD Suspension Assemblies.

19.    The Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased products in the United States not for resale which included one or more HDD Suspension Assemblies.

## PARTIES

### Plaintiffs

20.    Plaintiff Ari Brock is a California resident who purchased at least one HDD Suspension Assembly indirectly from at least one Defendant.

21.    Plaintiff Ari Brock brings this suit on behalf of himself and all others similarly situated, upon personal knowledge as to the facts pertaining to himself and upon information and belief as to all other matters, and based on the investigation of counsel.

22.    When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

### NHK Defendants

23.    Defendant NHK Spring Co., Ltd. is a Japanese corporation with its principal place of business in Yokohama, Japan. NHK Spring Co., Ltd. – directly or through its affiliates, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies

6

that were sold and purchased throughout the United States, including in this District, during the Class Period.

24.     Defendant NHK International Corporation is a Michigan corporation with its principal place of business in Novi, Michigan. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

25.     Defendant NHK Spring (Thailand) Co., Ltd. is a Thai corporation with its principal place of business in Samutprakarn, Thailand. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

26.     Defendant NHK Spring Precision (Guangzhuo) Co., Ltd. is a Chinese corporation with its principal place of business in Guangzhou, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

27.     Defendant NAT Peripheral (Dong Guan) Co. Ltd. ("NAT Dong Guan") is a Chinese corporation with its principal place of business in Guangdong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant Nat Dong Guan directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

28.     Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a Chinese corporation with its principal place of business in Hong Kong, China. It is an affiliate of and wholly controlled by NHK Spring Co., Ltd. – Defendant NAT H.K. directly or through its subsidiaries, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies

that were sold and purchased throughout the United States, including in this District, during the Class Period.

### TDK Defendants

29.     Defendant TDK Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan. TDK Corporation – directly or through its affiliates, which it wholly owned or controlled – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

30.     Defendant Magnecomp Precision Technology Public Co. Ltd. is a Thai corporation with its principal place of business in Ayutthaya, Thailand. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Magnecomp – directly or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

31.     Defendant SAE Magnetics (H.K.) Ltd. is a Chinese corporation with its principal place of business in Hong Kong, China. Defendant SAE Magnetics – directly or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

32.     Defendant Hutchinson Technology Inc. is a Minnesota corporation with its principal place of business in Hutchinson, Minnesota. TDK Corporation acquired Hutchinson Technology Inc. on October 6, 2016. It is an affiliate of and wholly controlled by TDK Corporation. Hutchinson Technology Inc. – directly or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

33.     Defendant Headway Technologies, Inc. is a Delaware corporation with its principal place of business in Milpitas, California. It is an affiliate of and wholly controlled by TDK Corporation. Defendant Headway Technologies – directly or through its affiliates – manufactured, marketed and/or sold HDD suspension assemblies that were sold and purchased throughout the United States, including in this District, during the Class Period.

CLASS ACTION COMPLAINT

## AGENTS AND CO-CONSPIRATORS

34.    Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

35.    Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with the Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

36.    Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

## FACTUAL ALLEGATIONS

### A.    HDD Suspension Assemblies

37.    "HDD Suspension Assemblies" are components of hard disk drives, which are used to store information electronically and are incorporated into computers or sold as stand-alone electronic storage devices. Hard disk drives use magnetic recording heads to read from and write onto rapidly spinning disks. Suspension assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the hard disk drives' circuitry.

9



Figure 1.[5]



Figure 2.[6]

38.    Suspension assemblies are a critical component to position the read/write head above the data in the surface of the rapidly spinning disks in hard disk drives helping to "track follow" while maintaining a consistent "flying height" clearance between the head and the disk.



Figure 3.[7]

---

[5] NHK Spring (Thailand) – Disk Drive Suspension Division Products, available at: http://www.nhkspg.co.th/en/our_product/producttopic3.php

[6] Tech-FAQ, "How Data is Stored in a Hard Disk," available at: http://www.tech-faq.com/how-data-is-stored-in-your-hard-disk.html

[7] Extreme Tech, "How a Hard Drive Works," June 27, 2011, available at: https://www.extremetech.com/computing/88078-how-a-hard-drive-works

10

---

39. The accuracy of this positioning over the tracks on the disk is a large determinant of areal density and subsequently each disk's data capacity. The suspension has a built-in actuator that is controlled to hold the head within a small tolerance of the centerline of the data track.



Figure 4.[8]

40. While the head is held on track in the plane of the disk, some movement of the head in a direction perpendicular to the surface of the disk is allowed in response to changes in the disk's surface and in response to shock events that might occur when a laptop computer is bumped. It is the suspension's role to maintain the position of the head within a safe range during these periods to keep it from hitting the disk's surface, thus preventing damage which could result in what is commonly known as a "head crash" that destroys the information stored on the disk.[9]

41. Defendants manufacture and sell HDD Suspension Assemblies to HDD manufacturers, which in turn sell HDDs containing the assemblies to manufacturers of products that include HDDs or directly to consumers.

42. Plaintiffs and members of the proposed Classes purchased HDD Suspension Assemblies indirectly from one or more of the Defendants and their co-conspirators. By way of

[8] Minoru Sasaki, Yoshihiro Inoue, and Hiroyuki Yamada, "Active Vibration Control of a Microactuator for the Hard Disk Drive Using Self-Sensing Actuation," *Smart Materials Research*, vol. 2012, Article ID 920747, 7 pages, 2012. Available at: https://doi.org/10.1155/2012/920747.

[9] TDK Magnecomp Precision Technology Public Co., Ltd., "What is a Suspension Assembly?" Available at: https://www.magnecomp.tdk.com/Education/edu?view=01

CLASS ACTION COMPLAINT

1  example, an owner of a computer may indirectly purchase one or more HDD Suspension

2  Assemblies from the Defendants or their co-conspirators as part of purchasing a new computer.

**B.    The Structure and Characteristics of the HDD Suspension Assemblies
Market Render the Conspiracy More Plausible**

43.    The market in the United States is conducive to a price-fixing agreement and has

made collusion particularly attractive in this market because of its structure and other

characteristics.  Specifically, the HDD Suspension Assemblies market: (1) has high barriers to

entry; and (2) has inelasticity of demand.

**1.    The HDD Suspension Assemblies Market Has High Barriers to Entry**

44.    A collusive arrangement that raises product prices above competitive levels would,

under basic economic principles, attract new entrants seeking to benefit from the supra-competitive

pricing.  Where, however, there are significant barriers to entry, new entrants are less likely to

enter the market.  Thus, barriers to entry help to facilitate the formation and maintenance of a

cartel.

45.    There are substantial barriers that preclude, reduce, or make more difficult entry

into the HDD Suspension Assemblies market.  A new entrant into the business would face costly

and lengthy start-up costs, including multi-million dollar costs associated with manufacturing

plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-

standing customer relationships.

46.    The Defendants also own patents related to the manufacture of HDD Suspension

Assemblies.  For example, the TDK Defendants own at least nine (9) patents related to the

manufacture of HDD Suspension Assemblies.[10]  The NHK Defendants similarly own at least six

(6) patents related to the manufacture of HDD Suspension Assemblies.[11] Defendants' place a

---

[10] *See, e.g.,* Patent Nos. US7477487B1, US5793569A, US5850319A, US5894655A, US6023574A, US6141187A, US6700745B2, US6894873B2, US7375927B1.

[11] *See, e.g.,* Patent Nos. US6597538B1, US6697227B2, US6721133B2, US6940696B2, US6956720B2, US6967820B2.

significant and costly burden on potential new entrants, who must avoid infringing on those patents when entering the market with a new product.

47.     In addition, HDD manufacturers cannot change HDD Suspension Assemblies suppliers randomly after a supplier is initially selected because the manufacturers design the features of their hard disk drives so that the HDD Suspension Assemblies they purchase for a hard disk drive are then integrated with the other components of the drive. Thus, HDD manufacturers and Defendants must agree on a design that is unique to a particular hard disk drive model.  It would be difficult for a new market entrant to do so.

**2.      Market Consolidation and Concentration**

48.     A concentrated market is more susceptible to effective collusion and other anticompetitive practices. The HDD Suspension Assembly industry was highly concentrated during the Class Period.

49.     The demand for HDD Suspension Assemblies depends on the demand for HDDs which in turn is driven by the demand for HDD-based capacity, primarily fueled by the ever-expanding consumer storage consumption and enterprise storage requirements.

50.     More than 200 companies have manufactured HDDs over time, most of which disappeared through bankruptcy or acquisitions. By 2008, consolidations concentrated production in just a handful of HDD manufacturers. Consolidation continued during the Class Period. Today, only three HDD manufacturers remain: Western Digital Corporation, Seagate Technology, LLC, and Toshiba Electronics Devices & Storage Corporation. Their market shares are approximately 40%, 37%, and 23% respectively.[12]

51.     As the HDD market became increasingly concentrated, the Suspension Assembly industry experienced a similar trend of consolidation.

52.     By 2005, Hutchinson held approximately 55% of the world market share and NHK Spring accounted for approximately 22% of the world market share in the suspension

---

[12] Forbes, "HDD Growth in Nearline Markets," Feb. 5, 2018, available at: https://www.forbes.com/sites/tomcoughlin/2018/02/05/hdd-growth-in-nearlinemarkets/#2347c9b62997..

13

assembly industry.[13] MPT, created through the 2005 merger between the Data Storage Division of Magnecomp International Ltd. and KR Precision Public Company, occupied roughly 20% of the market.[14]

53.    Further consolidation took place shortly before and during the Class Period. In 2007, TDK announced its acquisition of a majority share of Thailand-based MPT and began producing HDD Suspension Assemblies following the acquisition.[15]

54.    By 2012, TDK, NHK Spring, and Hutchinson collectively controlled 96% of the global suspension market.[16]

55.    In October 2016, TDK acquired Hutchinson, increasing TDK's market share to 55-60%. Following the acquisition, TDK and NHK became the world's only two primary producers of HDD Suspension Assemblies.[17]

56.    Collectively, Defendants controlled over 95% of the global market for HDD Suspension Assemblies throughout the Class Period.

### 3.    Inelasticity of Demand for HDD Suspension Assemblies

57.    "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

58.    For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining

---

[13] Magnecomp Precision Technology Public Co. Ltd, 2005 Form 56-1, Section 2, "Business Operation of MPT and its Subsidiaries," at 10, available at: http://capital.sec.or.th/webapp/corp_fin/datafile/56/20050520E06.DOC.

[14] Magnecomp Precision Technology Public Co., Ltd., "About Magnecomp," available at: https://www.magnecomp.tdk.com/Home/About.

[15] TDK Global, "TDK to Purchase Shares of Magnecomp Precision Technology Public Company Limited, Make a Subsidiary," August 29, 2007, available at: https://www.tdk.com/corp/en/news_center/press/aah24000.htm.

[16] Dr. R. Castellano, "The Dynamics of the HDD Industry and Its Impact on CMP," 2012, at 9, available at https://nccavs-usergroups.avs.org/wpcontent/uploads/CMPUG2012/CMP2012_9castellano.pdf.

[17] TDK Corporation 2017 Annual Report, "Segments at a Glance: Magnetic Application Products Segment," at 45, available at https://www.tdk.com/ir/ir_library/annual/2017/html/file/all.pdf.

14

sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.    Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

59.    Demand for HDD Suspension Assemblies is highly inelastic. Demand for HDD Suspension Assemblies is inelastic because there are no close substitutes for these products.  In addition, customers must purchase HDD Suspension Assemblies as an essential part of a hard disc drive, even if the prices are kept at a supra-competitive level.

## C.    **Government Investigations**

60.    A globally coordinated antitrust investigation is taking place in the United States, Brazil, and Japan, aimed at suppliers of HDD Suspension Assemblies.  The investigations sprang largely from information provided in Panasonic Corp.'s cooperation as part of its 2013 guilty plea and $56.5 million settlement with the DOJ over allegations it conspired to fix prices for automotive parts.

61.    In July 2016, the Japan Fair Trade Commission ("JFTC") searched the offices of TDK Corp. and NHK Spring Co. on suspicion that they formed a price cartel for electronic parts for hard disk drives. The JFTC suspected the two manufacturers of setting retail prices for HDD Suspension Assemblies, used for hard drives in personal computers and gaming consuls, in consultation with each other in violation of the anti-monopoly law.[18]

62.    In July 2016, the U.S. Department of Justice Antitrust Division ("DOJ") sent a letter to Hutchinson Technology Incorporated stating that the DOJ opened an investigation relating to the sale of HDD Suspension Assemblies. The DOJ's letter stated that neither Hutchinson nor any Hutchinson employee was currently a subject of the DOJ investigation, but that the company may have documents and electronic information relevant to the investigation.[19]

---

[18] Japan Times, "TDK, NHK Spring searched over alleged price cartel," July 26, 2016, available at: https://www.japantimes.co.jp/news/2016/07/26/business/corporate-business/tdk-nhk-spring-searched-alleged-price-cartel/#.XZujdfZFwqk

[19] Competition Policy International, "US: Hutchinson cooperating with DOJ in hard drive investigation," July 31, 2016, available at: https://www.competitionpolicyinternational.com/us-hutchinson-cooperating-with-doj-with-hard-drive-investigation/

63.     In April 2018, Brazilian antitrust authorities launched an investigation into allegations that TDK Corp. and four other companies with current or former ties to the Japanese conglomerate colluded for more than a decade to fix prices in the market for hard disk components. Brazil's Administrative Council for Economic Defense ("CADE") said in a statement that the alleged international cartel involved sharing data and divvying up customers to keep prices high on HDD Suspension Assemblies.  The statement said CADE has evidence of email exchanges and meetings used to facilitate the cartel, which involved sharing current and proposed pricing information, client bids, allocation of customers, production capacity and usage fee structures.[20]

**D.      Defendant NHK Spring Co. Ltd. Pleads Guilty to Price-Fixing**

64.     On July 29, 2019, Defendant NHK Spring Co. Ltd. agreed to plead guilty and to pay a $28.5 million fine for participating in an unlawful combination and conspiracy to suppress and eliminate competition in the market for HDD Suspension Assemblies by agreeing to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of HDD Suspension Assemblies sold in, or delivered to, the United States and elsewhere, from at least as early as May 2008 until at least April 2016.

65.     According to the DOJ announcement of the guilty plea, "NHK Spring and its co-conspirators exchanged pricing information including anticipated pricing quotes, which they used to inform their negotiations with U.S. and foreign customers that purchases suspension assemblies and produced hard dis drives for sale in, or delivery to, the U.S. and elsewhere."

66.     Assistant Attorney General Delrahim of the Antitrust Division added, "While these parts are physically small, they are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."

67.     According to the Information filed, Defendant NHK Spring Co. Ltd. and its co-conspirators carried out the HDD Suspension Assemblies conspiracy by:

---

[20] Law 360, "Brazil Says 5 Cos. May Have Fixed Prices For Hard Disk Parts," April 27, 2018, available at: https://www.law360.com/articles/1038188/brazil-says-5-cos-may-have-fixed-prices-for-hard-disk-parts.

16

(a)    engaging in discussions and attending meetings during which they reached agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for, HDD suspension assemblies to be sold in the United States and elsewhere;

(b)    exchanging HDD suspension assemblies pricing information, including anticipated pricing quotes, in the United States and elsewhere;

(c)    relying on their agreements not to compete and using the exchanged pricing information to inform their negotiations with U.S. and foreign customers that purchased HDD suspension assemblies and produced hard disk drives for sale in, or delivery to, the United States and elsewhere;

(d)    selling HDD suspension assemblies in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices; and

(e)    accepting payment for HDD suspension assemblies sold in, or for delivery to, the United States and elsewhere at collusive and noncompetitive prices.[21]

## **CLASS ACTION ALLEGATIONS**

68.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included as a component part one or more HDD Suspension Assemblies that were manufactured by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of the Defendants.

69.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

---

[21] *United States v. NHK Spring Co., Ltd.,*, 2:19-cr-20503-MAG-DRG (E.D. Mich. July 29, 2019), Dkt. No. 1, available at: https://www.justice.gov/opa/press-release/file/1188586/download.

> All persons and entities who, during the Class Period, in the Indirect Purchaser States[22] indirectly purchased a product not for resale which included as a component part one or more HDD Suspension Assemblies that were manufactured by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of the Defendants.

70. The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are the Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased HDD Suspension Assemblies directly or for resale.

71. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

72. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of HDD Suspension Assemblies sold in the United States;

(b) The identity of the participants of the alleged conspiracy;

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e) Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

---

[22] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

(f)    Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)    Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)    The effect of the alleged conspiracy on the prices of HDD Suspension Assemblies sold in the United States during the Class Period;

(i)    Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)    Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)    The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)    The appropriate class-wide measure of damages for the Damages Class.

73.    Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by the Defendants' wrongful conduct in that they paid artificially inflated prices for HDD Suspension Assemblies purchased indirectly from the Defendants and/or their co-conspirators.

74.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

19

75.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

76.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

77.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

### PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

78.     The Defendants' price-fixing conspiracy had the following effects, among others:

(a)   Price competition has been restrained or eliminated with respect to HDD Suspension Assemblies;

(b)   The prices of HDD Suspension Assemblies have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)   Indirect purchasers of HDD Suspension Assemblies have been deprived of free and open competition; and

(d)   Indirect purchasers of HDD Suspension Assemblies paid artificially inflated prices.

79.     During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for HDD Suspension Assemblies.  HDD manufacturers passed on inflated

prices to Plaintiffs and the members of the Classes.  Those overcharges have unjustly enriched Defendants.

80.     The markets for HDD Suspension Assemblies and the market for hard disk drives are inextricably linked and intertwined because the market for HDD Suspension Assemblies exists to serve the hard disk drive market.  Without the hard disk drive, the HDD Suspension Assemblies have little to no value because they have no independent utility.  Indeed, the demand for hard disk drives creates the demand for HDD Suspension Assemblies.

81.     HDD Suspension Assemblies are identifiable, discrete physical products that remain essentially unchanged when incorporated into a hard disk drive.  As a result, HDD Suspension Assemblies follow a traceable physical chain of distribution from the Defendants to Plaintiffs and the members of the Classes, and costs attributable to HDD Suspension Assemblies can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

82.     Just as HDD Suspension Assemblies can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of HDD Suspension Assemblies affect prices paid by indirect purchasers of hard disk drives containing HDD Suspension Assemblies.

83.     While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces.  The HDD manufacturers are subject to vigorous price competition.  The HDD manufacturers have thin net margins, and are therefore at the mercy of their component costs, such that increases in the price of components such as HDD Suspension Assemblies lead to corresponding increases in prices hard disk drives.  When downstream distribution markets are highly competitive, as they are in the case of hard disk drives containing HDD Suspension Assemblies as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiffs and members of the Classes.

84.    Hence the inflated prices of HDD Suspension Assemblies in hard disk drives resulting from Defendants' bid-rigging and price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by HDD manufacturers.

85.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[23]

86.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[24]

87.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD Suspension Assemblies and, as a direct and foreseeable result, the price of hard disk drives containing HDD Suspension Assemblies. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent

---

[23] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

[24] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

CLASS ACTION COMPLAINT

variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis - called regression analysis - is commonly used in the real world and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs.

88.    Thus, it is possible to isolate and identify only the impact of an increase in the price of HDD Suspension Assemblies on prices for hard disk drives even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of HDD Suspension Assemblies affects changes in the price of hard disk drives. In such models, the price of HDD Suspension Assemblies would be treated as an independent or explanatory variable. The model can isolate how changes in the price of HDD Suspension Assemblies impact the price of hard disk drives containing HDD Suspension Assemblies while controlling for the impact of other price-determining factors.

89.    The precise amount of the overcharge impacting the prices of hard disk drives containing HDD Suspension Assemblies can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

90.    In addition to the regression analysis discussed above demonstrating impact on consumers, the DOJ's Antitrust Division, which has been investigating this cartel for some time, **has concluded that the "impact on American consumers and businesses is direct and substantial**." Makan Delrahim, then Acting Assistant Attorney General in charge of the DOJ's Antitrust Division said: "While these parts are physically small, they are critical to the operation and performance of electronic devices, and their impact on American consumers and businesses is direct and substantial."

91.    By reason of the violations of the antitrust laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD Suspension Assemblies than they would have paid in the absence of Defendants'

illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

**A.     The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims**

92.     Plaintiffs repeat and re-allege the allegations set forth above.

93.     Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) the public announcements of the government investigations into price-fixing of HDD Suspension Assemblies began in July 2016.

94.     Plaintiffs and the members of the Classes are consumers who purchased or leased hard disk drives containing HDD Suspension Assemblies.  They had no direct contact or interaction with the Defendants and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the public announcements of the government investigations began in July 2016.

95.     No information in the public domain was available to Plaintiffs and members of the Classes prior to the public announcements of the government investigations beginning in July 2016 that revealed sufficient information to suggest that the Defendants were involved in a criminal conspiracy to price-fix and rig bids for HDD Suspension Assemblies.  Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of the Defendants' dealings with HDD manufacturers or other direct purchasers, much less the fact that they and their co-conspirators had engaged in the combination and conspiracy alleged herein.

96.     For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run, and has been tolled with respect to the claims that Plaintiffs and the members of the Classes have alleged in this Complaint.

**B.**    **Fraudulent Concealment Tolled the Statute of Limitations**

97.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until the public announcement of the government investigations into price-fixing of HDD Suspension Assemblies.

98.    Before that time, Plaintiffs and the members of the Classes were unaware of the Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for HDD Suspension Assemblies throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by the Defendants' unlawful conduct.

99.    The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

100.    By its very nature, Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. HDD Suspension Assemblies are not exempt from antitrust regulation and, thus, before July 2016, Plaintiffs and members of the Classes reasonably considered the HDD Suspension Assemblies industry to be a competitive industry. Defendants met and communicated in secret and agreed to keep the facts about their collusive conduct from being discovered by any member of the public or by the HDD manufacturers and other direct purchasers with whom they did business. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of the Defendants' prices for HDD Suspension Assemblies before July 2016.

101.    Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

25

102.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until the public announcements of the government investigations beginning in July 2016.

103.    For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until July 2016.

### FIRST CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (on behalf of Plaintiffs and the Nationwide Class)

104.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

105.    The Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

106.    The acts done by each of the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

107.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for HDD Suspension Assemblies, thereby creating anticompetitive effects.

108.    The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for HDD Suspension Assemblies throughout the United States.

109.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for HDD Suspension Assemblies

110.    As a result of the Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased HDD Suspension Assemblies have been harmed by being forced to pay inflated, supra-competitive prices for HDD Suspension Assemblies.

111.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

112.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Plaintiffs and members of the Nationwide Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

113.    Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

114.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

115.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against the Defendants, preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF
### Violation of State Antitrust Statutes
### (on behalf of Plaintiffs and the Damages Class)

27

116.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

117.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD Suspension Assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

118.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for HDD Suspension Assemblies and to allocate customers for HDD Suspension Assemblies in the United States.

119.    In formulating and effectuating this conspiracy, the Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price HDD Suspension Assemblies at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to HDD Suspension Assemblies sold in the United States;

(b)    allocating customers and markets for HDD Suspension Assemblies in the United States in furtherance of their agreements; and

(c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

120.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD Suspension Assemblies.

121.    Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

CLASS ACTION COMPLAINT

122.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Arizona Uniform State Antitrust Act</u>, Ariz. Rev. Stat., §§ 44-1401, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arizona; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq*.

123.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>California Cartwright Act</u>, Cal. Bus. & Prof. Code, §§ 16700, *et seq*.

(a)    During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD Suspension Assemblies at supra-competitive levels.

29

(b)    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, HDD Suspension Assemblies.

(c)    For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following:  (1) Fixing, raising, stabilizing, and pegging the price of HDD Suspension Assemblies; and (2) Allocating among themselves the production of HDD Suspension Assemblies.

(d)    The combination and conspiracy alleged herein has had, inter alia, the following effects:  (1) Price competition in the sale of HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased HDD Suspension Assemblies directly or indirectly from the Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

124.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>District of Columbia Antitrust Act</u>, D.C. Code Ann. §§ 28-4501, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

125.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Florida Antitrust Act</u>, Fla. Stat. §§ 542.15, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Florida commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Fla. Stat. §§ 542.15, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Fla. Stat. §§ 542.15, *et seq.*

126.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Hawaii Antitrust Act, Haw. Rev. Stat. §§ 480-4, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Hawaii commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Rev. Stat. §§ 480-4, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Haw. Rev. Stat. §§ 480-4, *et seq.*

32

127.    The Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Iowa Competition Law</u>, Iowa Code §§ 553.1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Iowa; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

128.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Kansas Restraint of Trade Act</u>, Kan. Stat. Ann., §§ 50-101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Kansas; (2) HDD Suspension Assemblies price were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

CLASS ACTION COMPLAINT

1    (b)    During the Class Period, Defendants' illegal conduct substantially affected
2    Kansas commerce.

3    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs
4    and members of the Damages Class have been injured in their business and property and
5    are threatened with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in
7    restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.*  Accordingly,
8    Plaintiffs and members of the Damages Class seek all forms of relief available under
9    Kansas Stat. Ann. §§ 50-101, *et seq.*

10    129.    Defendants have entered into an unlawful agreement in restraint of trade in
11    violation of the <u>Maine Antitrust Statute</u>, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

12    (a)    Defendants' combinations or conspiracies had the following effects:  (1)
13    HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated
14    throughout Maine; (2) HDD Suspension Assemblies prices were raised, fixed, maintained
15    and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of
16    the Damages Class were deprived of free and open competition; and (4) Plaintiffs and
17    members of the Damages Class paid supra-competitive, artificially inflated prices for HDD
18    Suspension Assemblies.

19    (b)    During the Class Period, Defendants' illegal conduct substantially affected
20    Maine commerce.

21    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs
22    and members of the Damages Class have been injured in their business and property and
23    are threatened with further injury.

24    (d)    By reason of the foregoing, Defendants have entered into agreements in
25    restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*  Accordingly,
26    Plaintiffs and members of the Damages Class seek all relief available under Maine Rev.
27    Stat. Ann. 10, §§ 1101, *et seq.*

28

34

130.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Massachusetts Antitrust Act</u>, ALM GL ch. 93 § 12, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Massachusetts commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of ALM GL ch. 93 § 12, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under ALM GL ch. 93 § 12, *et seq*.

131.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Michigan Antitrust Reform Act</u>, Michigan Comp. Laws §§ 445.771, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

35

(b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

132.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Minnesota Antitrust Law</u>, Minn. Stat. §§ 325D.49, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, the Defendants' illegal conduct substantially affected Minnesota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

36

133.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Mississippi Antitrust Statute</u>, Miss. Code Ann. §§ 75-21-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

134.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Missouri Antitrust Act</u>, Missouri Stat. §§ 416.011, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Missouri commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Missouri Stat. §§ 416.011, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri Stat. §§ 416.011, *et seq.*

135.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Nebraska Junkin Act</u>, Neb. Rev. Stat. §§ 59-801, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

136.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Nevada Unfair Trade Practices Act</u>, Nev. Rev. Stat. §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

137.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>New Hampshire Antitrust Statute</u>, N.H. Rev. Stat. §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

39

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

138.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Antitrust Act, N.M. Stat. §§ 57-1-1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

40

139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>New York Donnelly Act</u>, N.Y. Gen. Bus. Law §§ 340, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies when they purchased hard disk drives containing HDD Suspension Assemblies, or purchased products that were otherwise of lower quality than they would have been absent Defendants' and their co-conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*.  The conduct set forth above is a per se violation of the Act.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>North Carolina General Statutes</u> §§ 75-1, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed,

41

maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

141.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Uniform State Antitrust Act, N.D. Cent. Code §§ 51-08.1-01, *et seq*.

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

42

1       (d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq*.

142.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Oregon Antitrust Law</u>, Or. Rev. Stat. §§ 646.705, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq*.

143.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Rhode Island Antitrust Act</u>, R.I. Gen. Laws §§ 6-36-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed,

43

maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Rhode Island Revised Statutes §§ 646.705, *et seq.*

144.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Antitrust Statute, S.D. Codified Laws §§ 37-1-3.1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

44

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

145.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Tennessee Trade Practices Act</u>, Tenn. Code Ann. §§ 47-25-101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, the Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

146.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Utah Antitrust Act</u>, Utah Code Ann. §§ 76-10-3101, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained

45

and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.*  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

147.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Vermont Antitrust Law</u>, Vermont Stat. Ann. 9 §§ 2453, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

148.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>West Virginia Antitrust Act</u>, W.Va. Code §§ 47-18-1, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*.  Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

149.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the <u>Wisconsin Antitrust Act</u>, Wis. Stat. §§ 133.01*, et seq*.

(a)     Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed,

maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

150.    Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

151.    In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

152.    Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

**THIRD CLAIM FOR RELIEF**
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

153.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

154.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

155.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*

(a)    Defendants and their co-conspirators knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)    Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)    During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)    As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

49

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

156.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of <u>California Unfair Competition Law</u>, Cal. Bus. & Prof. Code § 17200, *et seq*.

(a)     During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:  (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq*., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to consumers of HDD Suspension Assemblies (or hard disk drives containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially-inflated prices for HDD Suspension Assemblies (or hard disk drives containing them).  Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

157.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*

CLASS ACTION COMPLAINT

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in the District of Columbia.

(b)     The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies.  Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public.  Defendants took grossly unfair advantage of Plaintiffs.  The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

(c)     Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open

competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)     As a direct and proximate result of Defendants' conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

158.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Florida Deceptive and Unfair Trade Practices Act</u>, Fla. Stat. §§ 501.201, *et seq.*

(a)     Defendants' unlawful conduct had the following effects:     (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

159.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Hawaii Unfair and Deceptive Trade Practices Act</u>, Haw. Rev. Stat. §§ 480-1, *et seq*.

(a)   Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)   During the Class Period, the Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

160.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of <u>Massachusetts Consumer Protection Act</u>, Mass. G.L. c. 93A, §2.

(a)   Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

CLASS ACTION COMPLAINT

(c)     Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

(e)     Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.  More than thirty days has passed since such demand letters were served, and each Defendant served has failed to make a reasonable settlement offer.

(f)     By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

161.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

(a)     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Michigan.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD

Suspension Assemblies were sold, distributed, or obtained in Michigan, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under the Michigan Consumer Protection Act.

CLASS ACTION COMPLAINT

162.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*

(a)   Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Minnesota.

(b)   Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Minnesota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)   Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)   Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)   Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)   Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under the Minnesota Consumer Fraud Act.

163.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

(a)    Members of the Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Missouri.

(c)    Defendants agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.    The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful conduct had the following effects:    (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j)    Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-

9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

164.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Montana Unfair Trade Practices and Consumer Protection Act</u>, Mont. Code, §§ 30-14-101, *et seq.*

    (a)    Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Montana; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

    (b)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

    (d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and §§ 30-14-101, *et. seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

165.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Nebraska Consumer Protection Act</u>, Neb. Rev. Stat. § 59-1602, *et seq.*

    (a)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

(c)    As a direct and proximate result of Defendants' illegal conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1602, *et. seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under Neb. Rev. Stat. § 59-1602, *et. seq.*

166.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

(a)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

61

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. tit. XXXI § 358-A, *et seq.*, and, accordingly, Plaintiff and members of the Damages Class seek all relief available under N.H. Rev. Stat. Ann. tit. XXXI § 358-A:10 and 358A:10-a.

167.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>New Mexico Unfair Practices Act</u>, New Mexico Stat. § 57-12-1, *et seq*.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and artificially inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, inter alia, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for HDD Suspension Assemblies as set forth in N.M.S.A., § 57-12-2E.  Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged.  There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs' could avoid the overcharges.

Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

168.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New York Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    Defendants and their co-conspirators made public statements about the prices of HDD Suspension Assemblies and products containing HDD Suspension Assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for HDD Suspension Assemblies and products containing HDD Suspension Assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD Suspension Assemblies were misled to believe that they were paying a fair price for HDD Suspension Assemblies or the price increases for HDD Suspension Assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

(e)    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

64

(f)    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)    Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    During the Class Period, Defendants' marketed, sold, or distributed HDD Suspension Assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in New York.

(j)    Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

169.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*.

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in

CLASS ACTION COMPLAINT

North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware.  Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants' public statements concerning the price of HDD Suspension Assemblies created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)    The conduct of the Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)    Defendants' unlawful conduct had the following effects:    (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

CLASS ACTION COMPLAINT

(e)    During the Class Period, Defendants' marketed, sold, or distributed HDD Suspension Assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)    During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in North Carolina.

(g)    Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

170.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>North Dakota Unfair Trade Practices Law</u>, N.D. Cent. Code § 51-10, *et seq.*

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes North Dakota.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in North Dakota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed,

CLASS ACTION COMPLAINT

suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under N.D. Cent. Code § 51-10, *et seq*.

171.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Oregon Unlawful Trade Practices Act</u>, Or. Rev. Stat. § 646.605, *et seq*.

(a)    Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Oregon.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Oregon, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiff and

members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Or. Rev. Stat. § 646.605, *et seq*.

172.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq*.

(a)     Members of this Damages Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Rhode Island.

(c)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence.  Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair.

(d)     Defendants' unlawful conduct had the following effects:    (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs

and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)    As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(f)    Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD Suspension Assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices set by a free and fair market.   Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(g)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

173.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of <u>South Carolina Unfair Trade Practices Act</u>, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition;

CLASS ACTION COMPLAINT

and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

174.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>South Dakota Deceptive Trade Practices and Consumer Protection Law</u>, S.D. Codified Laws § 37-24, *et seq.*

(a)     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes South Dakota.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in South Dakota, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

CLASS ACTION COMPLAINT

(d)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under S.D. Codified Laws § 37-24, *et seq*.

175.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq*.

1          (a)     Defendants engaged in the conduct described herein in connection with the

2    sale of HDD Suspension Assemblies in trade or commerce in a market that includes Utah.

3          (b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix,

4    control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD

5    Suspension Assemblies were sold, distributed, or obtained in Utah, which conduct

6    constituted unfair practices in that it was unlawful under federal and state law, violated

7    public policy, was unethical, oppressive and unscrupulous, and caused substantial injury

8    to Plaintiff and members of the Damages Class.

9          (c)     Defendants concealed, suppressed, and omitted to disclose material facts to

10   Plaintiff and members of the Damages Class concerning Defendants' unlawful activities

11   and artificially inflated prices for HDD Suspension Assemblies. The concealed,

12   suppressed, and omitted facts would have been important to Plaintiff and members of the

13   Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

14         (d)     Defendants concealed, suppressed, and omitted to disclose material facts to

15   Plaintiff and members of the Damages Class concerning Defendants' unlawful activities

16   and artificially inflated prices for HDD Suspension Assemblies. The concealed,

17   suppressed, and omitted facts would have been important to Plaintiff and members of the

18   Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

19         (e)     Defendants misrepresented the real cause of price increases and/or the

20   absence of price reductions in HDD Suspension Assemblies by making public statements

21   that were not in accord with the facts.

22         (f)     Defendants' statements and conduct concerning the price of HDD

23   Suspension Assemblies were deceptive as they had the tendency or capacity to mislead

24   Plaintiff and members of the Damages Class to believe that they were purchasing HDD

25   Suspension Assemblies at prices established by a free and fair market.

26         (g)     Defendants' unlawful conduct had the following effects: (1) HDD

27   Suspension Assemblies price competition was restrained, suppressed, and eliminated

28

throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Ann § 13-11-19(5) and 13-11-20.

176.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the <u>Vermont Consumer Fraud Act</u>, 9 Vt. Stat. Ann. § 2451, *et seq.*

(a)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence.  Defendants misrepresented to all purchasers during the Class Period that their HDD Suspension Assemblies prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects:  (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and

CLASS ACTION COMPLAINT

members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by the Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices born by a free and fair market.  Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

177.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

(a)     Defendants engaged in the conduct described herein in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Virginia.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiff and members of the Damages Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiff and members of the Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or

CLASS ACTION COMPLAINT

1    property. Accordingly, Plaintiff and members of the Damages Class seek all relief available

2    under Va. Code Ann. § 59-1-20(A).

3    178.    Defendants have engaged in unfair competition or unfair, unconscionable, or

4    deceptive acts or practices in violation of the <u>West Virginia Consumer Credit and Protection Act</u>,

5    W. Va. Code § 46A-6-101, *et seq.*

6    (a)    Defendants engaged in the conduct described herein in connection with the

7    sale of HDD Suspension Assemblies in trade or commerce in a market that includes West

8    Virginia.

9    (b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix,

10    control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD

11    Suspension Assemblies were sold, distributed, or obtained in West Virginia, which conduct

12    constituted unfair practices in that it was unlawful under federal and state law, violated

13    public policy, was unethical, oppressive and unscrupulous, and caused substantial injury

14    to Plaintiff and members of the Damages Class.

15    (c)    Defendants concealed, suppressed, and omitted to disclose material facts to

16    Plaintiff and members of the Damages Class concerning Defendants' unlawful activities

17    and artificially inflated prices for HDD Suspension Assemblies. The concealed,

18    suppressed, and omitted facts would have been important to Plaintiff and members of the

19    Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

20    (d)    Defendants concealed, suppressed, and omitted to disclose material facts to

21    Plaintiff and members of the Damages Class concerning Defendants' unlawful activities

22    and artificially inflated prices for HDD Suspension Assemblies. The concealed,

23    suppressed, and omitted facts would have been important to Plaintiff and members of the

24    Damages Class as they related to the cost of HDD Suspension Assemblies they purchased.

25    (e)    Defendants misrepresented the real cause of price increases and/or the

26    absence of price reductions in HDD Suspension Assemblies by making public statements

27    that were not in accord with the facts.

28

(f)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiff and members of the Damages Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(g)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    As a direct and proximate result of the above-described unlawful practices, Plaintiff and members of the Damages Class suffered ascertainable loss of money or property. Accordingly, Plaintiff and members of the Damages Class seek all relief available under W. Va. Code § 46A-6-106.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Damages Class)**

179.    Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs.

180.    Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.

181.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched.  Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD Suspension Assemblies.

182.    Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs of the members of the Damages Class for HDD Suspension Assemblies.

183.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

184.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased new hard disk drives containing HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request that:

185.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

186.    That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)    A *per se* violation of Section 1 of the Sherman Act; and

(c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein.

(d)    Acts of unjust enrichment by Defendants as set forth herein.

80

187.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

188.    Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

189.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

190.    Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

191.    Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

192.    Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

193.    Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

1

2     Dated:  October 22, 2019                    */s/ Kalpana Srinivasan*
                                                   KALPANA SRINIVASAN (SBN 237460)
3                                                  ksrinivasan@susmangodfrey.com
                                                   MARC M. SELTZER (SBN 54534)
4                                                  mseltzer@susmangodfrey.com
                                                   STEVEN SKLAVER (SBN 237612)
5                                                  ssklaver@susmangodfrey.com
                                                   **SUSMAN GODFREY L.L.P.**
6                                                  1900 Avenue of the Stars, Suite 1400
                                                   Los Angeles, CA 90067-6029
7                                                  Telephone (310) 789-3100
                                                   Facsimile (310) 789-3150
8

9                                                  CHANLER A. LANGHAM (TX 24053314)
                                                   (*pro hac vice* to be filed)
10                                                 clangham@susmangodfrey.com
                                                   **SUSMAN GODFREY L.L.P.**
11                                                 1000 Louisiana, Suite 5100
                                                   Houston, Texas 77002-5096
12                                                 Telephone (713) 651-9366
                                                   Facsimile (713) 654-6666
13
                                                   *Attorneys for Plaintiff Ari Brock, on behalf of*
14                                                 *himself and others similarly situated*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT